**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| BRENDA T.,[1] | : | Case No. 2:23-cv-02980 |
| | : | |
| Plaintiff, | : | District Judge Sarah D. Morrison |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[2]

Plaintiff filed an application for Disability Insurance Benefits in March 2019.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. After the Appeals Council denied Plaintiff's request for review of that

decision, Plaintiff filed an action with this Court.[3] The Court remanded the case to the

Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council

remanded the case pursuant to the District Court's order. The same ALJ held another

hearing and again concluded that Plaintiff was not under a "disability" as defined in the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

[3] Assigned to District Judge Michael H. Watson, Case Number 2:22-cv-00187.

Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since May 1, 2016.[4] At that time, she was fifty years old. She was fifty-one years old as of her date last insured of March 31, 2018. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-10 at PageID 1198-1241), Plaintiff's Statement of Errors ("SE," Doc. No. 8), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[4] Plaintiff initially alleged a disability onset date of August 14, 2014. Prior to her initial hearing, Plaintiff amended her alleged onset date of disability to May 1, 2016. (AR, Doc. No. 6-6 at PageID 289.)

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

3

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

4

the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

> Step 1:    Plaintiff did not engage in substantial gainful activity during the relevant period from May 1, 2016 to the date last insured of March 31, 2018.
>
> Step 2:    She had the severe impairments of degenerative changes of the lumbar and thoracic spine, degenerative joint disease of the knees, bilateral carpal tunnel syndrome ("CTS"), and obesity.
>
> Step 3:    She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can stand and/or walk for up to [thirty] minutes at a time for a total of up to four hours in an eight-hour workday. [Plaintiff] must be permitted to alternate between sitting and standing every [thirty] minutes, which could be combined with usual breaks or other workplace tasks, although as a result [Plaintiff] would be off task five percent of the workday in addition to usual breaks. Fingering and handling are each limited to no more than frequently. Climbing ramps and stairs, crawling, crouching, kneeling, operation of foot controls, pulling, pushing, and stooping are each limited to no more than occasionally. [Plaintiff] cannot climb ladders, ropes, and scaffolds."
>
>               She was unable to perform any of her past relevant work.
>
> Step 5:    Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

(Decision, Doc. No. 6 at PageID 1205-30.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 1231.)

### B.    W.J. Gramann, M.D.

Primary care physician Dr. Gramann completed a Physical Capacity Evaluation

questionnaire in November 2019. (AR, Doc. No. 6-8 at PageID 953-54.) Dr. Gramann

listed "appropriate diagnoses" of chronic major depression, degenerative disc disease,

radiculopathy, and sacroiliitis. (*Id.* at PageID 953.) Dr. Gramann opined that Plaintiff

could lift and carry up to ten pounds occasionally and up to one to two pounds frequently.

(*Id.*) He opined that she could walk for less than two hours and stand for less than thirty

minutes during an eight-hour day. (*Id.*) Dr. Gramann did not respond to the prompt that

asked about Plaintiff's maximum ability to sit, but he noted that Plaintiff "needs to move

frequently due to back pain." (*Id.*) Dr. Gramann indicated that Plaintiff did not need an

assistive device to walk or balance, and that Plaintiff did not need to lie down during the

workday. (*Id.*) When asked to describe the medical findings that support these

limitations, Dr. Gramann noted: "Tender to palpation over [the lumbosacral junction and

right sacroiliac] joint. Negative [straight leg raising]. [Decreased] sensations, lateral soles

of feet bilater[ally]." (*Id.*)

Regarding postural limitations, Dr. Gramann opined that Plaintiff could

occasionally climb stairs and could never twist, stoop, bend, crouch, or climb ladders.

(AR, Doc. No. 6-8 at PageID 953.) He indicated that Plaintiff would have difficulty

balancing on narrow, slippery, or erratically-moving surfaces, as well as level terrain.

(*Id.*) Dr. Gramann supported this portion of his opinion with this explanation: "Loss of

balance [with] occasional falls – [left] wrist fracture [September 2, 2019] in such a fall."

(*Id.*) In terms of Plaintiff's manipulative abilities, Dr. Gramann opined that Plaintiff

could constantly handle and frequently performing fingering (fine manipulation such as picking and pinching), due to Raynaud's phenomenon. (*Id.* at PageID 954.) He opined that Plaintiff could occasionally reach due to decreased balance, and occasionally push or pull due to unsteadiness on Romberg testing. (*Id.*)

Dr. Gramann also opined that Plaintiff needed to avoid all exposure to extreme cold (due to Raynaud's phenomenon) and hazards/heights (due to balance problems), and must avoid concentrated exposure to extreme heat, noise, and vibration. (AR, Doc. No. 6-8 at PageID 954.) Finally, Dr. Gramann opined that Plaintiff was capable of performing work with the above-mentioned limitations for up to three days per week, over the course of a full month. (*Id.*)

The ALJ concluded that Dr. Gramann's opinions were "entirely unsupported." (Decision, Doc. No. 6-10 at PageID 1224.) The ALJ explained: "While this source provided primary care to [Plaintiff] during the period under consideration, there is no evidence that comprehensive musculoskeletal or neurological examinations were ever conducted." (*Id.*) The ALJ also discounted Dr. Gramann's opinions because "[Plaintiff] denied back pain, arthralgia, and myalgia at a visit to this source in September 2017 (Exhibit 13F/11)." (*Id.*)

With respect to consistency, the ALJ found that "entirely or mainly normal objective medical evidence and examination findings . . . do not support [Plaintiff's] subjective allegations, and activities of daily living in excess of subjective complaints." (Decision, Doc. No. 6-10 at PageID 1224.) The ALJ also noted that Dr. Gramann relied on "conditions and events not present prior to the expiration of insured status . . .

7

including Raynaud's syndrome and left wrist fracture occurring due to a fall in September 2019." (*Id*.) Therefore, the ALJ concluded that Dr. Gramann's opinions were inconsistent with the totality of the evidence in the record. (*Id*.)

After finding that Dr. Gramann's opinions were "entirely unsupported by and inconsistent with the totality of the evidence," the ALJ concluded that those opinions were "entirely unpersuasive in assessing [Plaintiff's] physical functional limitations, restrictions, and [RFC]." (Decision, Doc. No. 6-10 at PageID 1224.)

## C.    Charles May, D.O.

Family physician Dr. May, who treated Plaintiff for her work-related injuries on behalf of the Ohio Bureau of Workers' Compensation (BWC), completed several Physician's Report of Work Ability forms for the Ohio BWC between February 2016 and December 2017. (AR, Doc. No. 6-7 at PageID 425-26, 431-32, 434-35, 441-42, 449-50, 455-56, 457-58, 464-65; AR, Doc. No. 6-9 at PageID 1106-07.) On forms dated between February 2016 and October 2016, Dr. May opined that Plaintiff could continuously push and pull up to ten pounds but never anything heavier. (*Id.* at PageID 449, 455, 457, 464.) Between January 2017 and December 2017, Dr. May opined that Plaintiff could continuously push and pull up to twenty-five pounds but never anything heavier. (*Id.* at PageID 425, 431, 434, 447, 1106.) On all of the forms, Dr. May opined that Plaintiff could continuously lift and carry no more than ten pounds and never anything heavier. (*Id*. at PageID 425, 431, 434, 441, 449, 455, 457, 464.) Dr. May also opined that Plaintiff could constantly type and reach above shoulder level, frequently bend, occasionally twist or turn, and never squat, kneel, or climb. (*Id.*) According to Dr. May, Plaintiff could sit

8

for four hours (with a break), walk for thirty minutes, and stand for forty-five minutes in an eight-hour workday. (*Id.*) He opined that Plaintiff could work only six to eight hours per week, and for a total of just two hours per day. (*Id.*)

In July 2017, Dr. May drafted a letter to explain his opinions. (AR, Doc. No. 6-7 at PageID 427.) Dr. May opined that both the L5-S1 disc bulge and radiculopathy caused Plaintiff's pain. (AR, Doc. No. 6-7 at PageID 427.) Dr. May also opined that "the main disabling factor" was Plaintiff's radiculopathy. (*Id.*) Dr. May explained that Plaintiff had not received enough relief from epidural steroid injections to return to work. (*Id.*)

Dr. May completed a Physical Capacity Evaluation form in November 2019. (AR, Doc. No. 6-8 at PageID 945-46.) He checked boxes to indicate his opinion that Plaintiff could lift and carry up to ten pounds occasionally, and could never frequently lift or carry any amount of weight. (*Id.* at PageID 945.) Dr. May opined that Plaintiff could walk for less than two hours, stand for less than two hours, and sit for four hours during an eight-hour workday. (*Id.*) He opined that Plaintiff required a job that allowed the flexibility to alternate positions at will. (*Id.*) Dr. May indicated that Plaintiff could never climb ladders and could occasionally twist, stoop, bend, crouch, and climb stairs. (*Id.*) He indicated that Plaintiff would have difficulty balancing on narrow, slippery, or erratically-moving surfaces, but did not require the use of an assistive device to walk or balance. (*Id.*) Dr. May opined that Plaintiff could occasionally push or pull and could frequently reach, handle, finger, and feel. (*Id.* at PageID 946.) Dr. May also opined that Plaintiff needed to avoid concentrated exposure to extreme cold and even moderate exposure to hazards. (*Id.*) Dr. May concluded that Plaintiff was able to perform work with these restrictions for

"[four] days per week, but less than a full week," and for "less than three consecutive weeks per month." (*Id.*)

Finally, in December 2019, Dr. May completed a Physical Capacity Form for the Ohio Public Employees Retirement System (OPERS). (AR, Doc. No. 6-17 at PageID 1961-63.) Dr. May opined that Plaintiff could lift, carry, and push no more than ten pounds occasionally. (*Id.* at PageID 1961.) Dr. May also opined that Plaintiff could occasionally (defined as up to 2.6 hours per day) walk, climb stairs, stoop, crouch, sit, and stand; frequently (defined as 2.7 to 5.3 hours per day) reach, handle, finger, and feel; and never balance, kneel, and crawl. (*Id.* at PageID 1961-62.) Dr. May attributed these limitations to lumbar degenerative disc disease, disc displacement, and lumbar radiculopathy. (*Id.*) According to Dr. May, Plaintiff was overall limited to "less than [a] sedentary level of work" and needed the ability to "change positions at will." (*Id.* at PageID 1962.) Dr. May also opined that Plaintiff needed to be able to use a TENS unit, and stated that she cannot take medication at work. (*Id.*)

Dr. May supplemented this opinion with an explanatory letter in February 2020. (*Id.* at PageID 1960.) Dr. May confirmed that he limited Plaintiff to lifting no more than ten pounds and to stooping and crouching no more than occasionally. (*Id.*) He explained that activities such as reaching, handling, and fingering "still require some strength and do place some stress on the spine, which would relate to the lumbar spine condition." (*Id.*) Dr. May further explained that Plaintiff suffered from lumbar degenerative disc disease and a lumber disc displacement with radiculopathy. (*Id.*)

10

The ALJ concluded that Dr. May's opinions were unpersuasive because they were "only minimally supported and overall inconsistent with the totality of the evidence." (Decision, Doc. No. 6-10 at PageID 1226.) The ALJ acknowledged that Dr. May treated Plaintiff regularly during the relevant time period, and "consistently not[ed] findings such as complaints of back pain with decreased right lower extremity sensory and lumbar range of motion, and positive straight leg raising results." (*Id.*) However, the ALJ found that Dr. May also "consistently noted 5/5 strength of one or both lower extremities." (*Id.*) The ALJ reasoned that because Dr. May's records reflect both normal and abnormal findings, his opinions "are at most minimally supported by the totality of the evidence from the amended alleged onset date of disability through the date last insured." (*Id.*) The ALJ also discounted opinions that covered the time periods before the amended alleged disability onset date and after the expiration of Plaintiff's insured status. (*Id.*)

With respect to consistency, the ALJ noted that Dr. May's opinions were inconsistent with Plaintiff's denial of back pain, arthralgia, and myalgia in September 2017, and negative back findings in October 2017. (Decision, Doc. No. 6-10 at PageID 1225-26.)  The ALJ found that Dr. May's opinions regarding reaching and climbing ladders, ropes, and scaffolds were "consistent with the totality of the evidence . . . and persuasive to that extent." (*Id.*) The ALJ found Dr. May's other suggested limitations to be "inconsistent with the totality of the evidence . . . and unpersuasive" because of "entirely or mainly normal objective medical evidence and examination findings that do not support [Plaintiff's] subjective allegations, and activities of daily living in excess of subjective complaints." (*Id.*)

11

D.    **State Agency Medical Consultants**

State agency medical consultant Abraham Mikalov, M.D. completed a Disability
Determination Explanation form in June 2019. (AR, Doc. No 6-3 at PageID 101-07.)
After he summarized the evidence, Dr. Mikalov concluded that Plaintiff's reported pain
symptoms were only "[p]artially [c]onsistent" with the medical evidence. (*Id.* at PageID
101-05.) Dr. Mikalov explained that "[w]hile the objective findings do show evidence of
ortho[pedic] problems resulting in [an] antalgic gait and decreased strength, there are no
objective findings supporting limitations in her ability to sit." (*Id.* at PageID 105.)

Dr. Mikalov opined that Plaintiff could lift and/or carry up to twenty pounds
occasionally and ten pounds frequently, stand and/or walk for approximately four hours
in an eight-hour workday, and sit for approximately six hours in an eight-hour workday.
(AR, Doc. No. 6-3 at PageID 105-06.) Dr. Mikalov based the four-hour standing and
walking limitation on "end[-]stage [osteoarthritis of the left] knee (eventually resulting in
[left total knee arthroplasty in October 2017]) and persistent back pain since 2014, with
obesity (BMIs ranging from upper 30s to low 40s)." (*Id.* at PageID 106.) Dr. Mikalov
opined that Plaintiff was limited to occasional pushing, pulling, and operating controls
with the bilateral upper and lower extremities, "due to [carpal tunnel syndrome], back
problems, and [left total knee arthroplasty]." (*Id.*) According to Dr. Mikalov, Plaintiff
should never climb ladders, ropes, or scaffolds and only occasionally climb ramps and
stairs, stoop, kneel, crouch, and crawl. (*Id.*) Dr. Mikalov also opined that Plaintiff was
limited to frequent handling and fingering bilaterally, due to CTS. (*Id.* at PageID 107.)

12

Maria Congbalay, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in January 2020. (AR, Doc. No. 6-3 at PageID 123-29.) After summarizing the evidence, Dr. Congbalay concurred with Dr. Mikalov's conclusion that Plaintiff's reported symptoms were only partially consistent with the medical evidence. (*Id.* at PageID 123-26.) Dr. Congbalay also concurred with and adopted the exertional and non-exertional limitations identified by Dr. Mikalov. (*Id.* at PageID 127-28.)

The ALJ concluded that Dr. Mikalov's and Dr. Congbalay's opinions were "overall persuasive." (Decision, Doc. No. 6-10 at PageID 1222.) He explained that "[i]n terms of supportability . . . these sources did not treat [Plaintiff] for physical impairments and related symptoms from the amended alleged onset date of disability through the date last insured." (*Id.*) However, the ALJ noted that "given that the remainder of the opinion evidence as to [Plaintiff's] physical functioning from the amended alleged onset date of disability through the date last insured is mainly only at most minimally supported, as discussed below, these opinions are only slightly less supported than the remainder." (*Id.* at PageID 1222-23.)

Next, with respect to consistency, the ALJ found the limitation to occasional operation of hand controls to be inconsistent with the record "given that there is no evidence of abnormality of [Plaintiff's] hands during the period under consideration." (Decision, Doc. No. 6-10 at PageID 1223.) He adopted the recommended limitation of frequent fingering and handling because of Plaintiff's history of bilateral CTS, and also limited Plaintiff to frequent operation of hand controls. (*Id.*) The ALJ then addressed

13

Plaintiff's ability to sit, sit, stand, and walk compared to the consultants' limitation to light-level exertion: " Given the preponderance of [Plaintiff's] reports that she cannot sit, stand, and/or walk for more than 30 minutes at a time, as discussed above, I limited these activities accordingly and provided for position changes after each 30 minutes of performing these activities as set forth above." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in his analysis of the opinion evidence and failed to comply with 20 C.F.R. § 1520c. (SE, Doc. No. 8 at PageID 2132-38.) Specifically, Plaintiff challenges the ALJ's evaluation of the opinions of Dr. May, Dr. Gramann, and the state agency medical consultants. (*Id.*) For the reasons discussed below, Plaintiff's assertions are well-taken and the ALJ's decision should be reversed.

### A.    Applicable Law.

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any

14

medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.
§ 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical
opinion and prior administrative medical finding by considering the following factors: (1)
supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and
(5) any other factor "that tend[s] to support or contradict a medical opinion or prior
administrative medical finding." 20 C.F.R. § 404.1520c(c).

 The first two factors—supportability and consistency—are the "most important."
20 C.F.R. § 404.1520c(b)(2). The supportability factor recognizes that "[t]he more
relevant the objective medical evidence and supporting explanations presented by a
medical source are to support his or her medical opinion(s) . . . the more persuasive the
medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's
supportability analysis addresses whether a medical professional has sufficient
justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-
CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord
Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.
20, 2024) ("Supportability addresses the extent to which a medical source or consultant
has articulated record evidence bolstering her own opinion or finding.").

 The consistency factor, by contrast, recognizes that "[t]he more consistent a
medical opinion(s) . . . is with the evidence from other medical sources and nonmedical
sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R.
§ 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical
opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

15

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

## B. The ALJ Reversibly Erred In His Evaluation Of The Opinions And Findings Of Primary Care Physician Dr. Gramann.

The ALJ erred when evaluating Dr. Gramann's opinions because his analyses of the supportability and consistency factors are not supported by substantial evidence. For this reason, the undersigned Magistrate Judge recommends that the Court reverse and remand the ALJ's decision.

The ALJ found Dr. Gramann's opinions to be "entirely unpersuasive" because they were "inconsistent with the totality of the evidence." (Decision, Doc. No. 6-10 at

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

PageID 1224.) The ALJ did not cite any specific evidence to support this conclusion. (*Id.*) Instead, he cited to his earlier summary of the medical evidence. (*Id.*) In that summary, the ALJ discussed Plaintiff's medical records, including Plaintiff's complaints and the objective findings, and concluded that "the evidence does not reasonably support [Plaintiff's] allegations regarding the duration, frequency, and intensity of [her] symptoms." (*Id.* at PageID 1220-22.) However, the ALJ based this conclusion on a highly selective (and incorrect) summary of the evidence in the record.

For example, the ALJ stated that Plaintiff exhibited "only mildly positive straight leg raising test results on one occasion (Exhibit 8F/3)." (Decision, Doc. No. 6-10 at PageID 1220 (citing AR, Doc. No. 6-7 at PageID 524).) But the ALJ ignored numerous other treatment notes that documented pain upon straight leg raising. (AR, Doc. No. 6-7 at PageID 412, 418, 422, 428, 436, 443, 447, 453, 459.)

The ALJ also cited to an April 2017 independent medical examination and noted that Rask and Spurling signs were negative. (Decision, Doc. No. 6-10 at PageID 1220 (citing AR, Doc. No. 6-7 at PageID 530.) Yet the ALJ ignored the fact that during that examination, Kemp's testing was positive bilaterally, "[a]ll sciatic tension testing" caused posterior back and thigh pain, and Plaintiff was unable to perform Faber-Patrick's testing. (AR, Doc. No. 6-7 at PageID 530.)

Additionally, the ALJ stated: "[Plaintiff] repeatedly had 5/5 strength of one or both lower extremities with intact left lower extremity sensory [findings] (Exhibit 6F/93, 97, 99, 103, 109, 117, 120, 124, 128, 132, and 134, and 9F/3)." (Decision, Doc. No. 6-10 at PageID 1221.) But the ALJ failed to acknowledge that several other examinations

showed decreased sensation in the right lower extremity and diminished deep tendon reflexes. (AR, Doc. No. 6-7 at PageID 412, 416, 418, 422, 428, 436, 439, 443, 447, 451, 459, 513, 530.)

The ALJ inexplicably cited an earlier independent medical examination in February 2015—which was prior to the amended alleged disability onset date—where the examiner documented good range of motion of the lumbar spine. (Decision, Doc. No. 6-10 at PageID 1221 (citing AR, Doc. No. 6-7 at PageID 524).) But the ALJ did not mention that the examiner also documented right-sided pain that radiated to the right leg upon extension of the back. (AR, Doc. No. 6-7 at PageID 524.) The ALJ also ignored numerous other examinations throughout the record that documented decreased range of motion in all planes of the lumbar spine secondary to pain. (*Id.* at PageID 412, 416, 418, 422, 428, 436, 439, 443, 447, 451, 459, 513, 530.)

The ALJ further stated that Plaintiff exhibited only a mildly antalgic gait during the February 2015 independent medical examination (which predated the amended alleged disability onset date). (Decision, Doc. No. 6-10 at PageID 1221 (citing AR, Doc. No. 6-7 at PageID 524).) Yet the ALJ ignored numerous other records during the relevant period where providers documented an antalgic gait. (AR, Doc. No. 6-7 at PageID 412, 416, 418, 422, 428, 436, 439, 443, 447, 451, 459, 513, 530.)

The ALJ also ignored additional examination abnormalities, including tenderness over the right sacroiliac joint and tenderness, trigger points, and myospasms over the lumber paraspinal muscles. (AR, Doc. No. 6-7 at PageID 412, 416, 418, 422, 428, 436, 439, 443, 447, 451, 459, 513, 530.)

18

The ALJ also ignored the lumbar spine MRI findings (which included a small right paracentral disc protrusion indenting the thecal sac at the L5-S1 level and moderate spondylosis) and EMG results (which showed a right sacroiliac radiculopathy). (*See* AR, Doc. No. 6-7 at PageID 305, 309, 445-46.) Although the ALJ summarized this evidence at Step Two, the ALJ did not mention these findings when he summarized the medical evidence in the RFC analysis. (Decision, Doc. No. 6-10 at PageID 1206, 1220-22.) Contrary to the ALJ's conclusion that "entirely or mainly normal objective medical evidence and examination findings . . . do not support [Plaintiff's] subjective allegations." (*id*. at PageID 1224), these MRI and EMG findings are *not* "mainly normal" and *do* reasonably support Plaintiff's subjective pain complaints.

The ALJ also failed to consider the consistency of Dr. Gramann's opinions with Dr. May's opinions. As discussed above, Dr. May repeatedly opined during the relevant period that Plaintiff could lift no more than ten pounds, walk for up to thirty minutes in an eight-hour workday, and stand for up to forty-five minutes in an eight-hour workday. (AR, Doc. No. 6-7 at PageID 425-26, 431-32, 434-35, 441-42, 449-50, 455-56, 457-58, 464-65; AR, Doc. No. 6-9 at PageID 1106-07.) Even though Dr. May's assessment is consistent with Dr. Gramann's opinion that Plaintiff was limited to no more than sedentary exertion, the ALJ did not consider the consistency of these opinions.

The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to

acknowledge numerous abnormal examination findings leads the Court to conclude that the ALJ did not resolve conflicts in the evidence. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). Accordingly, the ALJ's conclusion that Dr. Gramann's opinions were inconsistent with the totality of the evidence is unsupported by substantial evidence.

Similarly, the ALJ's conclusions regarding the supportability of Dr. Gramann's opinions are not supported by substantial evidence. The ALJ found these opinions to be unsupported because Dr. Gramann did not conduct comprehensive musculoskeletal or neurological examinations. (Decision, Doc. No. 6-10 at PageID 1224.) However, Plaintiff primarily treated with Dr. May and physiatrist Thomas Skeels, D.O for her work-related back injury complaints (*see, e.g.*, AR, Doc. No. 6-7 at PageID 453, 615, 647, 657), and Dr. Gramann reviewed these providers' imaging and treatment recommendations. (*See, e.g.*, AR, Doc. No. 6-7 at PageID 657.) The ALJ's rationale is therefore unsupported by the record. Further, the ALJ ignored Dr. Gramann's explanations for his suggested limitations—namely, that Plaintiff's back pain was associated with degenerative disc disease, radiculopathy, and sacroiliitis, and that objective findings included decreased sensation and tenderness to palpation over the lumbosacral junction and right sacroiliac joint. (AR, Doc. No. 6-8 at PageID 953.)

20

The ALJ also reasoned that Dr. Gramann's opinions were unsupportable because a September 2017 treatment note showed that Plaintiff denied having back pain, arthralgia, and myalgia. (Decision, Doc. No. 6-10 at PageID 1224 (citing AR, Doc. No. 6-7 at PageID 648).) The ALJ apparently referenced the "Review of Systems" section of that treatment note, which did not include *any* subjective complaints. (AR, Doc. No. 6-7 at PageID 648.) However, the "History of Present Illness" section of the treatment note showed that Plaintiff ***did*** complain that "[he]er back pain is heightening her anxiety and interfering with sleep." (*Id.* at PageID 647.) The ALJ's interpretation of this medical evidence was therefore incorrect. Moreover, Dr. Gramann noted Plaintiff's complaints of back pain and balance difficulties in other treatment notes. (*See, e.g.*, AR, Doc. No. 6-7 at PageID 653, 657, 765.)

Finally, the ALJ discounted Dr. Gramann's opinions because he "considered conditions and events not present prior to the expiration of insured status in arriving at these opinions including Raynaud's syndrome and left wrist fracture occurring due to a fall in September 2019." (Decision, Doc. No. 6-10 at PageID 1224.) But Dr. Gramann did not attribute any specific limitations to Plaintiff's 2019 left wrist injury. (*Id.* at PageID 953.) Instead, he merely referenced the left wrist fracture—which she sustained during a fall in September 2019—as an example of Plaintiff's balance difficulties and to support his opinion that Plaintiff would have difficulty balancing on narrow, slippery, or erratically-moving surfaces, as well as on level terrain. (*Id.* at PageID 953.) Indeed, Dr. Gramann's treatment notes indicate that Plaintiff complained of balance issues as early as 2015—well before the date last insured. (*See* AR, Doc. No. 6-7 at PageID 657.) Further,

21

although Dr. Gramann did not diagnose Raynaud's syndrome until April 2019, over a year after the date last insured (AR, Doc. No. 6-7 at PageID 763), Dr. Gramann only attributed two suggested limitations—frequent fingering and no exposure to extreme cold—to this condition. (AR, Doc. No. 6-8 at PageID 954.)

For all of these reasons, the ALJ erred because his evaluation of the consistency and supportability factors of Dr. Gramann's opinions is not supported by substantial evidence. The undersigned therefore recommends reversal.

### C.  The ALJ Reversibly Erred In His Evaluation Of The Opinions And Findings Of Treating Physician Dr. May.

The ALJ's analyses of the supportability and consistency factors of Dr. May's opinions are also unsupported by substantial evidence. For this reason, too, this case should be remanded.

The ALJ acknowledged that Dr. May consistently documented Plaintiff's subjective back pain complaints as well as abnormalities such as decreased right lower extremity sensory findings, decreased lumbar range of motion, and positive straight leg raising. (Decision, Doc. No. 6-10 at PageID 1225.) Nevertheless, based solely on his finding that Dr. May "consistently noted 5/5 strength of one or both lower extremities," the ALJ concluded that because Dr. May's "treatment records reflect abnormal findings offset by some normal findings, these opinions are at most minimally supported by the totality of the evidence . . . ." (*Id*.)

The ALJ's reasoning is faulty because it is not supported by substantial evidence. In March 2018, Dr. May documented ***decreased strength*** of the right leg and positive

22

Faber's testing to the sacroiliac joints. (AR, Doc. No. 6-7 at PageID 412.) This record belies the ALJ's statement that Dr. May "consistently noted 5/5 strength of one or both lower extremities." (Decision, Doc. No. 6-10 at PageID 1225.) The ALJ also ignored other abnormalities documented in Dr. May's treatment notes, such as difficulty sitting, tenderness, trigger points, myospasms, decreased deep tendon reflexes, and an antalgic gait. (*See, e.g.,* AR, Doc. No. 6-7 at PageID 418, 422, 428, 436, 443, 447, 453.) These abnormal findings support Dr. May's opinions but were not considered by the ALJ. Accordingly, the ALJ's justification for concluding that Dr. May's opinions were "at most minimally supported" is not supported by substantial evidence.

Similarly, the ALJ's findings regarding the consistency factor are not supported by substantial evidence. Although the ALJ found Dr. May's opinions to be inconsistent with Plaintiff's denial of back pain during a September 2017 office visit with Dr. Gramman ((Decision, Doc. No. 6-10 at PageID 1224), the ALJ misconstrued that treatment note (AR, Doc. No. 6-7 at PageID 648) and ignored other treatment notes that documented Plaintiff's complaints of back pain and balance difficulties. (*See, e.g.*, AR, Doc. No. 6-7 at PageID 653, 657, 765.)

The ALJ also cited to an October 2017 treatment note to support his conclusion of "negative back findings." (Decision, Doc. No. 6-10 at PageID 1226 (citing AR, Doc. No. 6-7 at PageID 538).) This conclusion is unsupported because this treatment note referenced a vaginal problem discussed during gynecological examination, when Plaintiff would not be expected to complain of back pain. (AR, Doc. No. 6-7 at PageID 537-38.)

23

Finally, as noted above, the ALJ erred in analyzing the consistency factor because he did not consider abnormal MRI and electromyography test results, and also did not compare the consistency of Dr. May's opinions with Dr. Gramman's opinions.

For these reasons, the ALJ's evaluation of the supportability and consistency factors of Dr. May's opinions is not supported by substantial evidence. This constitutes reversible error and provides another reason why the case should be remanded.

### D.     The ALJ Reversibly Erred When Evaluating The Findings Of The State Agency Medical Consultants.

The ALJ also erred because he did not address the supportability of the state agency medical consultants' findings, as required by 20 C.F.R. § 404.1520c(b)(2).

As discussed above, the ALJ concluded that he was "overall" persuaded by the consultants' findings. (Decision, Doc. No. 6-10 at PageID 1222.) The ALJ explained:

> In terms of supportability, I note that these sources did not treat [Plaintiff] for physical impairments and related symptoms from the amended alleged onset date of disability through the date last insured. However, given that the remainder of the opinion evidence as to [Plaintiff's] physical functioning from the amended alleged onset date of disability through the date last insured is mainly only at most minimally supported, as discussed below, these opinions are only slightly less supported than the remainder. As to consistency, I find no basis for limiting [Plaintiff] to occasional operation of hand controls given that there is no evidence of abnormality of [Plaintiff's] hands during the period under consideration. In light of [Plaintiff's] history of bilateral CTS, I adopted the State Agency limitations to frequent fingering and handling but find no basis for further limiting these activities given the absence of evidence documenting abnormality of [Plaintiff's] fingers and hands during the period under consideration. I further find that the limitation to frequent handling encompasses operation of hand controls. Given the preponderance of [Plaintiff's] reports that she cannot sit, stand, and/or walk for more than 30 minutes at a time, as discussed above, I limited these activities accordingly and provided for position changes after each 30 minutes of performing these activities as set

forth above. The remainder of these opinions is consistent with the totality
of the evidence, as discussed above.

(*Id.* at PageID 1222-23.)

Although the ALJ used the term "supportability," his analysis does not address the

supportability factor because the ALJ did not explain his consideration of the consultants'

supporting explanations and summaries of the evidence. *See* 20 C.F.R. § 404.1520c(c)(1).

At most, this discussion addresses the consistency factor, because the ALJ compared the

consultants' findings to the medical evidence of record and Plaintiff's subjective reports

of how long she could sit, stand, and walk. *See* 20 C.F.R. § 404.1520c(c)(2). The ALJ's

comparison of the consultants' findings to the other opinion evidence of record addresses

consistency, not supportability.

Defendant asserts that the ALJ addressed the supportability factor because "the

ALJ correctly noted that there were no treatment records." (Mem. In Opp., Doc. No. 10

at PageID 2153.) However, the ALJ's observation that the consultants did not treat

Plaintiff does not constitute a supportability analysis.

 Defendant also argues there is no "clear delineation between the 'supportability'

and 'consistency' factors" when evaluating prior administrative medical findings. (Mem.

In Opp., Doc. No. 10 at PageID 2152.) Defendant cites to a case from this district to

support this assertion. (*Id.* (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652,

2023 WL 2623571, at *8 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.).) However, cases from

other courts in this district—and other districts in this circuit—support the opposite

conclusion. *See, e.g., Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL

4905438, at *5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021).

The undersigned Magistrate Judge concludes that the rationale in *Hardy* and *Miles* is more consistent with the letter and spirit of the new regulations for evaluating opinion evidence. Since those regulations went into effect, ALJs must provide a "minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017); *see also* 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record.") (emphasis added). The articulation requirement includes explanations of the ALJ's analyses of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.") (emphasis added). A rule that requires courts and claimants to glean the ALJ's explanation of the supportability and consistency factors from unspecified parts of his decision does not satisfy the articulation requirement.

The undersigned also does not agree that "an inherent lack of clear delineation between supportability and consistency" (*Tyrone H.*, 2023 WL 2623571, at *6) prevents ALJs from separately analyzing these factors when they evaluate state agency consultant opinions. Distinct sections of the Disability Determination Explanation form require state agency consultants to (1) summarize the evidence that they reviewed and determined to be relevant, (2) explain whether the evidence is consistent with the claimant's subjective

complaints, (3) evaluate the medical opinions in the file, and (4) explain why the evidence supports the limitations assessed. (*E.g.,* AR, Doc. No. 8-3 at PageID 95, 97-100, 115, 117-21.) These reviewers routinely support their opinions with summaries of the evidence and explanatory statements. ALJs can therefore readily analyze supportability by considering the "objective medical evidence and supporting explanations presented by" them. 20 C.F.R. § 1520c(c)(1). The mechanism for analyzing supportability plainly differs from the mechanism for analyzing consistency, which requires ALJs to compare the consultants' opinions with the entire record. 20 C.F.R. § 1520c(c)(2).

In this case, the ALJ failed to provide the minimal articulation required to address the supportability factor when evaluating the state agency medical consultants' findings. Although the consultants provided summaries of evidence and explanations to support their opinions, the ALJ did not address them. Instead, he relied on Plaintiff's "reports" and "the totality of the evidence" to conclude that the state agency medical consultants' findings were "overall persuasive." (Decision, Doc. No. 6-10 at PageID 1222-23.) The ALJ therefore did not explain his consideration of the supportability factor.

The ALJ's failure to comply with a legal requirement constitutes reversible error, as the error was not harmless and instead prejudiced Plaintiff on the merits. *See Rabbers*, 582 F.3d at 654. This error provides another reason why the case should be remanded.

## VI.  REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

27

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 8) be GRANTED;

2.    The Court REVERSE the Commissioner's non-disability determination;

3.    No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

28

4.     This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.     This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).